DILLON, Judge.
Defendant Miguel A. Yanez ("Husband") appeals from an order awarding Plaintiff Ana B. Arroyo ("Wife") alimony. Both Husband and Wife appeal from an equitable distribution order distributing their property.
I. Background
Husband and Wife married in 1998 and separated in October 2014.
In February 2015, Wife commenced this divorce action, including requests for alimony and equitable distribution.
In December 2016, the trial court entered an order decreeing that Husband and Wife were divorced.
In December 2017, the trial court entered an order for alimony, requiring Husband to pay Wife $ 21,500.00 per month for a period of twenty-six (26) years (the "Alimony Order"). Husband timely appealed the Alimony Order.
In March 2018, the trial court entered an order for equitable distribution (the "Equitable Distribution Order"). Both Husband and Wife timely appealed the Equitable Distribution Order.
Both orders are now on appeal before this Court.
II. Analysis
A. Alimony Order
Husband appeals the Alimony Order, arguing that the trial court (1) abused its discretion in the amount and duration of alimony awarded and (2) committed reversible error by awarding attorney's fees.[1] We agree.
1. Alimony Award
Husband argues that the trial court erred in awarding Wife $ 21,500.00 per month for twenty-six (26) years.
While we review whether a spouse is entitled to an award of alimony de novo , we review the amount and duration of alimony awarded for an abuse of discretion. Rickert v. Rickert , 282 N.C. 373, 379, 193 S.E.2d 79, 82-83 (1972) ; Quick v. Quick , 305 N.C. 446, 453, 290 S.E.2d 653, 658 (1982).
Our General Statutes permit either party in a divorce action to move for alimony. N.C. Gen. Stat. § 50-16.3A(a) (2015). An award of alimony to a dependent spouse is proper where the trial court finds "that one spouse is a dependent spouse, that the other spouse is a supporting spouse, and that an award of alimony is equitable after considering all relevant factors[.]" Id.
Our General Assembly has provided a listing of sixteen (16) relevant factors to aid the trial court in determining the amount, duration, and manner of payment of alimony. N.C. Gen. Stat. § 50-16.3A(b)(1)-(16) (2017). For example, the relative earnings and earning capacities of the spouses are relevant factors. N.C. Gen. Stat. § 50-16.3A(b)(2) (2017). Generally, the actual income of each party is used in determining the amount of the award. Bowes v. Bowes , 287 N.C. 163, 171-72, 214 S.E.2d 40, 45-46 (1975). However, earning capacity, rather than actual income, may be used where a party has depressed or frustrated her income in bad faith. Id. at 171-73, 214 S.E.2d at 45-46. Bad faith, or an intent to avoid financial obligations, can be demonstrated through a party's refusal to seek or accept employment, refusal to secure or take a job, or deliberately not seeking employment. See id.
In the present appeal, Husband does not dispute that he is a supporting spouse, that Wife is a dependent spouse, or that alimony is equitable. Rather, Husband argues that the trial court abused its discretion in determining the amount ($ 21,500.00 per month) and duration (26 years) of the award. We agree.
The Alimony Order includes findings of fact regarding the monthly expenses as well as employment and income of both Husband and Wife. These findings, based on financial affidavits of the parties, indicate that Wife's monthly expenses were $ 15,298.24, to which she does not financially contribute. Therefore, the trial court ordered Husband to pay Wife $ 21,500.00 per month to wholly support her standard of living and to cover her taxes attributed to her alimony income. However, while the trial court properly considered a number of factors concerning Husband and Wife, the trial court did not consider Wife's earning capacity. N.C. Gen. Stat. § 50-16.3A(b)(2) (2017). That is, even though Wife did not contribute any income towards the end of the marriage, the trial court must consider whether she is able to contribute to her continued living and well-being.
We note the trial court's finding that "Wife does not have the ability to earn at a level comparable to that of Husband's ." (emphasis added). While this finding is supported by the evidence, the finding ignores other evidence that Wife does have the ability, to some degree , to provide for herself - Wife held gainful employment prior to becoming a homemaker in 2008 and solely supported herself and Husband while he was in medical school. Now, as a fifty-six (56) year-old woman with no minor children to care for, there is evidence that Wife is capable of financially contributing - to some extent - to her well-being. Indeed, even if Husband may be financially capable to fully support Wife, the trial court erred in not considering whether Wife has some ability to work. Thus, we reverse and remand that part of the Alimony Order, which orders Husband to pay Wife $ 21,500.00 per month.
The trial court also failed to make sufficient findings "explaining its reasoning for the duration of the alimony award[.]" Fitzgerald v. Fitzgerald , 161 N.C. App. 414, 422, 588 S.E.2d 517, 523 (2003) (remanding an alimony award to the trial court "to make further findings of fact explaining its reasoning for the duration of the alimony award"). Specifically, the trial court based the alimony award solely on "Husband's income " derived from his employment alone. There were no findings regarding the uncontradicted evidence that Husband was fifty-six (56) years old at the time the Alimony Order was entered and has mandatory retirement at sixty-five (65) years old, thereby contemplating a drastic change in his income in nine years. Indeed, the trial court could have considered other income and assets of Husband in calculating the amount and duration of the alimony award, but did not do so to justify its award. Thus, the mere recital of the court's "consideration of Husband's marital misconduct, the duration of the marriage, the ages and income earning capacities of each party" is insufficient to support the twenty-six (26) year duration of the alimony award. See Friend-Novorska v. Novorska , 131 N.C. App 867, 870-71, 509 S.E.2d 460, 462 (1998).
Lastly, Husband complains that the trial court engaged in "double dipping" when considering elements of the Equitable Distribution Order in its award of alimony and attorney's fees to Wife in the Alimony Order. Husband's argument is essentially as follows: (1) in the Equitable Distribution Order, Wife received cash and other assets to offset the award of shares in the medical practice to Husband; (2) but in the Alimony Award, the trial court considered the approximately $ 20,000.00 per month in "passive" income Husband receives by virtue of his ownership of these shares (above his approximately $ 55,000.00 per month of "earned" income from his practice); and, therefore, (3) the trial court should not have considered this "passive" income in determining Husband's ability to pay alimony to Wife, as Wife had already been "compensated" for these shares through the receipt of other assets in the Equitable Distribution Order. Husband's argument is misplaced. In determining the amount of an alimony award, it is appropriate for the trial court to consider the income of the supporting spouse, even the income he receives from the assets awarded to him from the marital estate. N.C. Gen. Stat. § 50-16.3A(b)(2)(4)(10)(16) (2017). In the same way, it is appropriate for the trial court to consider the income of the dependent spouse, even the income she receives from the assets awarded to her from the marital estate. Id.
Upon remand, the trial court shall reconsider all relevant factors and recalculate the amount and duration of alimony awarded to Wife and include findings of fact regarding same.
2. Attorney's Fees
Husband also argues that the trial court committed reversible error by awarding Wife $ 73,209.00 in attorney's fees. We agree.
Whether one is entitled to attorney's fees is a question of law and, therefore, is fully reviewable on appeal; the amount awarded, though, is reviewed for an abuse of discretion. Clark v. Clark , 301 N.C. 123, 136, 271 S.E.2d 58, 67 (1980).
Section 50-16.4 of our General Statutes permits a dependent spouse entitled to alimony to be awarded reasonable counsel fees if she cannot subsist the litigation. N.C. Gen. Stat. § 50-16.4 (2017). Essentially, the dependent spouse "must be unable to employ adequate counsel[.]" Hudson v. Hudson , 299 N.C. 465, 474, 263 S.E.2d 719, 725 (1980) ; see Barrett v. Barrett , 140 N.C. App. 369, 374-75, 536 S.E.2d 642, 646 (2000) ("[O]ur focus hinges on whether [the dependent spouse] had sufficient funds to defray the costs of litigation.").
In arguing that the trial court erred by awarding Wife attorney's fees, Husband contends that Wife was financially capable of securing and paying counsel in the underlying case. Husband cites evidence showing that Wife's liquid assets exceed $ 250,000.00, as well as Wife's receipt of post-separation support and her share of marital assets, as well as the forthcoming buy-out of the marital residence. Based on these assets and the evidence in this case, it appears as though Wife did have sufficient funds to defray the costs of litigation and therefore should not have been awarded attorney's fees. See Rickert , 282 N.C. at 381-82, 193 S.E.2d at 84-85 (holding that an order allowing counsel fees to be awarded to wife was erroneously entered where wife was awarded alimony, child support, the residence, and an automobile and was the owner of stocks and bonds valued in excess of $ 140,000.00); see also Barrett , 140 N.C. App. at 374-75, 536 S.E.2d at 646. As such, we conclude that finding of fact number 34 is not supported by the evidence. The award of attorney's fees in the Alimony Order is vacated for insufficient findings to support the award. On remand, the trial court may reconsider the issue and may order an award if supported by its findings.
B. Equitable Distribution Order
Both Husband and Wife appeal the Equitable Distribution Order for various reasons. Husband argues that the trial court improperly classified, valued, and distributed certain assets, including shares in his medical practice. Wife argues that the trial court erroneously valued Husband's shares in his medical practice and any increase in the shares from the date of the couple's separation until trial; she also contends that she should have been awarded expert witness costs.
We review an equitable distribution order for whether the trial court clearly abused its discretion. White v. White , 312 N.C. 770, 777 324 S.E.2d 829, 833 (1985). The trial court "may be reversed for abuse of discretion only upon a showing that its actions are manifestly unsupported by reason." Id.
Section 50-20 of our General Statutes governs equitable distribution. N.C. Gen. Stat. § 50-20 (2018). In conducting an equitable distribution, the trial court conducts a three-step process: (1) classify the property as martial, divisible, or separate, (2) calculate the net value of the marital and divisible property, and (3) distribute the marital and divisible property equitably. Id. ; see Cable v. Cable , 76 N.C. App. 134, 137, 331 S.E.2d 765, 767, cert. denied , 315 N.C. 182, 337 S.E.2d 856 (1985).
Property is classified as marital if it was "acquired by either spouse or both spouses during the course of the marriage and before the date of the separation of the parties[.]" N.C. Gen. Stat. § 50-20(b)(1) (2018). Property is separate if it was "acquired by a spouse before marriage or acquired by a spouse by devise, descent, or gift during the course of the marriage." N.C. Gen. Stat. § 50-20(b)(2) (2018). Divisible property includes, but is not limited to, appreciation and diminution in value of marital property from the date of separation to the date of distribution, passive income from marital property received after the date of separation, and passive increases and decreases in marital debt. N.C. Gen. Stat. § 50-20(b)(4) (2018). An equitable distribution order must completely list all of the parties' property and make findings of fact regarding it. N.C. Gen. Stat. § 50-20(j) (2018) ; Little v. Little , 74 N.C. App. 12, 17, 327 S.E.2d 283, 288 (1985). A distribution order that fails to list all of the marital property is fatally defective. Id.
In valuing property, the trial court uses the net value of the property rather than its fair market value. Wade v. Wade , 72 N.C. App. 372, 376, 325 S.E.2d 260, 266 (1985). And "[w]hen valuing a professional practice, a court should consider the business' fixed assets, the value of its work in progress and accounts receivable, its goodwill and its liabilities." Harvey v. Harvey , 112 N.C. App. 788, 791, 437 S.E.2d 397, 399 (1993). The valuation of the practice will not be disturbed if it is "based on competent evidence and on a sound valuation method or methods[.]" Poore v. Poore , 75 N.C. App. 414, 422, 331 S.E.2d 266, 272 (1985).
1. Classification, Valuation, and Distribution of Husband's 401(k) and its Appreciation
Husband and Wife stipulated that Husband owned an American Funds Profit Sharing 401(k) (the "401(k)") at the time of separation. Husband and Wife further stipulated that the 401(k), as of the date of separation, was marital property. However, the value of the 401(k) as of the date of separation was disputed. Husband contends that the value of 401(k) at the time of separation was $414,834.40 while Wife contends that the value of the 401(k) at the time of separation was $ 456,199.48.
Based on the testimony and evidence presented at trial, the trial court found that the 401(k) had a value of $456,199.48 as of the date of separation. We do not disturb the trial court's finding as a review of the record does not suggest an abuse of discretion in this valuation.
The value of the 401(k) increased in value after the date of separation; the parties stipulated that at the time of the equitable distribution its value was $ 604,593.00, which the court evenly distributed between Husband and Wife. In distributing $ 302,297.00 to Husband and $ 302,299.00 to Wife, the trial court determined that the increase in value, from the date of separation to the date of equitable distribution, of the 401(k) was "due to passive market forces," thereby making the appreciation divisible property to be split with Wife. N.C. Gen. Stat. § 50-20(b)(4) (2018).
However, the mere statement that "[t]he amount of the increase [is] due to passive market forces" is not sufficient. See Smith v. Smith , 336 N.C. 575, 579-80, 444 S.E.2d 420, 423 (1994) (holding that "the trial court must make ultimate findings of fact regarding the character of the total post-separation appreciation" and that a statement that the trial court has "considered all distributional factors raised by the evidence" is not enough). Moreover, the uncontradicted evidence at trial tended to show that the appreciation in value from the date of separation to the date of trial was due, at least in large part, to active contributions by both Husband and his medical practice.
Thus, the trial court's classification, valuation, and distribution of the 401(k) are not supported by the findings or evidence. That portion of the Equitable Distribution Order is reversed and remanded for reconsideration.
2. Valuation and Distribution of Safety Deposit Box Funds
Both Husband and Wife stipulated that they had a Safety Deposit Box in which there was cash that should be distributed to Wife. However, the parties disagree as to the amount of cash in the Safety Deposit Box. While Husband contends that the Safety Deposit Box contained $200,000.00, Wife contends that it only contained $ 50,000.00.
The source of the cash in the Safety Deposit Box is from Husband's prior medical practice in Puerto Rico. No receipts, invoices, or documents were entered into evidence regarding the amount of money in the Safety Deposit Box. Rather, both Husband and Wife testified to how much they believed was in the Safety Deposit Box. Husband's former counsel also testified that he had discussed the Safety Deposit Box with Wife's counsel, who informed him that Wife contended there was $ 80,000.00 in the Safety Deposit Box.
Based on the evidence, the trial court, in its discretion, found and concluded that the Safety Deposit Box contained $ 50,000.00 as of the date of separation and distributed same to Wife. As we do not reweigh evidence or assess the credibility of witnesses, we do not disturb the trial court's conclusion as to the valuation and distribution of the cash in the Safety Deposit Box. White , 312 N.C. at 777-78, 324 S.E.2d at 833. That portion of the Equitable Distribution Order is affirmed.
3. Valuation and Distribution of Life Insurance Policies
The existence of three life insurance policies and their valuation of $ 0.00 each was stipulated by both Husband and Wife. However, the trial court erroneously valued and distributed the life insurance policies as having a value of $ 1.00 each. Wife concedes this error by the trial court but cites to our Court's statement in Mishler v. Mishler that "in the complex litigation of equitable distribution, this Court will not remand a judgment for obviously insignificant errors." Mishler v. Mishler , 90 N.C. App. 72, 74, 367 S.E.2d 385, 387 (1988).
Indeed, the addition of $1.00 is not a significant error that warrants the remand of the Equitable Distribution Order. And if this error was the sole error committed by the trial court, we would not remand. However, as the Equitable Distribution Order is being remanded due to other errors of the trial court, this error may also be corrected. That portion of the Equitable Distribution Order is reversed and remanded for an entry of $ 0.00 value for the three life insurance policies.
4. Classification, Valuation, and Distribution of Vehicle Leases
Husband argues that the trial court erred in failing to address two vehicle leases which the parties stipulated were marital property[2] . More specifically, in their schedules of property, the leases were listed as marital property with no value ($ 0.00).[3] The leases were also listed as marital debt, having balances of $ 9,093.50 and $ 49,253.36 as of the date of separation for Husband's Porsche and Wife's Maserati, respectively. Wife contends that the leases were not debts subject to distribution but were ongoing expenses that Husband was obligated to continue while Husband contends that the leases were marital debt that he unilaterally paid down to $ 3,848.00 and $ 1,997.74, respectively, from the date of separation to the date of trial.
Wife cites to the parties' Post-Separation Support Order, which ordered Husband to "maintain the lease on [Wife's] car, namely the Maserati, making full and timely payments on the same thru 1/31/16" in support of her contention that the vehicle leases are not marital or divisible debt. Indeed, Section 50-20(f) of our General Statutes provides that "[t]he court shall provide for an equitable distribution without regard to alimony for either party[.]" N.C. Gen. Stat. § 50-20(f) (2018) ; see Hill v. Hill , 229 N.C. App. 511, 519-20, 748 S.E.2d 352, 359 (2013) (stating that since post-separation payments on the marital home "were [support payments] ordered pursuant to a post-separation support order[,]" "they were not divisible property and the trial court did not err in failing to find them to be divisible property"). Since the Post-Separation Support Order ordered Husband to maintain the lease of Wife's vehicle through January 31, 2016, any payments made from the date of separation to that date cannot be divisible property to be divided. Moreover, it is stipulated that the lease of Husband's Porsche was paid for by his employer. Therefore, the lease of the Porsche and the payments thereto are also not marital nor divisible debt. However, any payments on the Maserati lease made by Husband after January 31, 2016 are divisible property to be valued and distributed equitably. Thus, the trial court erred in failing to include findings of fact and conclusions of law regarding the lease of Wife's Maserati and payments made after January 31, 2016, which would have been divisible property. This issue is remanded to the trial court for consideration.
5. Valuation and Distribution of Practice Shares
Both parties take issue with the trial court's valuation and distribution of Husband's shares in his medical practice. Husband argues that the trial court abused its discretion by improperly valuing his shares in the practice. Wife argues that the trial court erred by failing to value and distribute the appreciation of Husband's shares from the date of separation to the date of trial.
a. Valuation and Distribution of Shares
Husband is a doctor in a medical practice, in which he owns 2,165.80 shares. Husband argues that the trial court erred in valuing and distributing his shares in the practice.
In the present case, the trial court utilized the Income Approach, as suggested by Wife's expert witness, to value Husband's shares in the medical practice. Under the Income Approach, Husband's 2,165.80 shares were valued at $ 814,605.00. The trial court, based on its reasoning in finding of fact number 60, discounted this value by 25% to $ 610,954.00.[4] While Husband and his expert witness contend that the Asset Approach should have been utilized in valuing his shares, the court made sufficient findings of fact to support its decision to follow Wife's suggested valuation scheme and discount rate therefrom.
This portion of the Equitable Distribution Order is affirmed.
b. Distribution of Share Appreciation
Wife argues that the trial court erred in failing to classify, value, and distribute the appreciation in value of Husband's shares in the medical practice from the date of separation to the date of trial.
In finding of fact number 64, the trial court found "that there is no increase in value of Husband's shares in [the medical practice] from the date of separation to the date of trial." However, in finding of fact number 59, the trial court states that Husband's shares in the medical practice were worth "$ 733,000.00 as of the date of separation" and "$ 788,000.00 as of the date of trial (an increase to which was due to passive market forces from the date of separation to the date of trial)[.]" Indeed, these two findings of fact are in direct conflict with one another. Thus, we remand the issue of appreciation of Husband's shares in the medical practice, or lack thereof, to the trial court.
6. Expert Witness Fees
Lastly, Wife argues that she should have been awarded expert witness fees. We disagree.
"In actions where allowance of costs is not otherwise provided by the General Statutes, costs may be allowed in the discretion of the court." N.C. Gen. Stat. § 6-20 (2018). While in the discretion of the court, such costs awarded are subject to the limitations and restrictions of Section 7A-305(d), which includes a limit of "reasonable and necessary fees of expert witnesses solely for actual time spent providing testimony at trial, deposition, or other proceedings." N.C. Gen. Stat. § 7A-305(d)(11) (2018) ; see id.
In the present case, Wife did call an expert to testify at trial. Thus, the trial court had the power to award her costs for this expert. N.C. Gen. Stat. § 7A-305(d)(11) (2018). However, in its sound discretion, the court did "not find cause to grant Wife's request for reimbursement of expert witness fees[.]" We discern no abuse of discretion in the trial court's decision to not award expert witness fees to Wife. That portion of the Equitable Distribution Order is affirmed.
III. Conclusion
Based on the foregoing, the Alimony Order is reversed and remanded with instructions for the trial court to consider Wife's earning capacity and Husband's mandatory retirement in calculating the amount and duration of alimony awarded and to vacate the award of attorney's fees.
The Equitable Distribution Order is affirmed in part and reversed and remanded in part. More specifically, we affirm the valuation of the cash in the Safety Deposit Box, the valuation and distribution of Husband's shares in his medical practice, and the denial of Wife's request for expert witness fees.
We reverse and remand certain portions of the Equitable Distribution Order to the trial court to revisit the valuation and distribution of the appreciation of Husband's 401(k) from the date of separation to the date of trial, the valuation of the life insurance policies, the valuation and distribution of the vehicle leases, and the classification, valuation, and distribution of the appreciation of Husband's shares in his medical practice from the date of separation to the date of trial.
AFFIRMED IN PART; REVERSED AND REMANDED IN PART; VACATED IN PART.
Report per Rule 30(e).
Judges MURPHY and ARROWOOD concur.

Husband has also motioned this Court to sanction Wife for failure to comply with the North Carolina Rules of Appellate Procedure in filing a supplemental record. We deny such motion.

In his brief, Husband also mentions a vehicle lease for a Porsche which the couple entered into for their son. However, as this lease was not included in the parties' schedule of assets and debts, the trial court did not have an obligation to classify, value, and distribute the lease of the son's Porsche. N.C. Gen. Stat. § 50-20 (2018). Likewise, we do not address Husband's arguments as they pertain to the son's Porsche.

See Dalgewicz v. Dalgewicz , in which our Court stated that "[b]ecause the vehicle was leased, neither plaintiff nor defendant had any ownership or equity interest in it, and therefore the trial court was prohibited from classifying and valuing it as a marital asset." 167 N.C. App 412, 423, 606 S.E.2d 164, 171 (2004) (citing Fox v. Fox , 103 N.C. App. 13, 18, 404 S.E.2d 354, 356 (1991) ). But see Hunley v. Hunley , 2003 N.C. App. LEXIS 1678, 2003 WL 21961396, *11-12 (N.C. Ct. App. Aug. 19, 2003) (affirming the classification, valuation, and distribution of the balance of a vehicle lease as a marital debt).

But see Almason v. Almason , 2017 N.C. App. LEXIS 3, 2017 WL 163780, *23-27 (N.C. Ct. App. Jan. 17, 2017) (remanding an equitable distribution order when the trial court "failed here to make clear why it was departing from the [proposed valuation scheme], and failed to make adequate findings justifying this choice.").